UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCISCO RODRIGO GALVAN,<br><br>  Plaintiff,<br><br>  v.<br><br>CITY OF VACAVILLE, Government Entity, CITY OF VACAVILLE POLICE CHIEF JOHN CARLI, in his individual capacity, AARON POTTER, MARC RAYMOND, BRIAN HALLEY, CHRIS HILL, individually and in their official capacities as Police Officers for City of Vacaville, and DOES 1-50, individually and in their official capacities as peace officers, jointly and severally,<br><br>  Defendants. | No. 2:18-cv-279-KJM-CKD<br><br>ORDER |

Defendants move to dismiss plaintiff Francisco Rodrigo Galvan's complaint in its entirety. ECF No. 13. As explained below, the court GRANTS in part defendants' motion to dismiss with leave to amend and DENIES the remainder of defendants' motion.

I.  BACKGROUND

Plaintiff Francisco Rodrigo Galvan alleges as follows in his complaint: On January 25, 2015 defendant Vacaville police officer Aaron Potter was dispatched to a Lowe's store in response to a phone call to the City's dispatch center by Jessica Waldurn. Compl. ¶¶ 23,

1

27. Waldurn reported to dispatch that Galvan was drunk and screamed at her during a disagreement about who would be dropped off first by their designated driver, who was part of their earlier social gathering at a bar. *Id.* ¶¶ 23-25. When Officer Potter arrived on scene, Waldurn spoke in person with Potter, saying she did not think their designated driver was safe with Galvan. *Id.* ¶ 27. Potter had observed Galvan and the designated driver on his way to the Lowe's store and he reported the designated driver did not attempt to "flag him down," nor was Galvan dragging the designated driver along with him. *Id.* Potter "became frustrated" and asked Waldurn if she thought the designated driver "was kidnapped." *Id.* After Waldurn replied the designated driver "was not kidnapped," Potter queried, "you're telling me nothing happened." *Id.*

Defendant Vacaville police officer Marc Raymond located Galvan and the designated driver near the intersection of Nut Tree Road and Orange Drive in Vacaville. *Id.* ¶ 28. Potter then drove to that location. *Id.* ¶ 29. When Potter arrived at that location, defendant Vacaville police officers Brian Halley and Chris Hill were flanking Galvan on his front left and right sides. *Id.* Potter "silently crept up on Galvan from behind while [Galvan] was facing Halley and Hill," then the officers "used physical force on Galvin without warning." *Id.* Potter, Hill and Halley "all used simultaneous physical force to take Galvan to the ground," with Hill using a "control hold" and Potter placing Galvan "in a chokehold from behind." *Id.* While Galvan was on the ground, Hill and Halley held Galvan's arms down while Potter mounted Galvan and "began to repeatedly punch Galvan in the face." *Id.* ¶ 30. Although Galvan had rotated from being on his back to being on his stomach, Halley and Hill continued to hold Galvan's arms while Potter remained on top of Galvan and "repeatedly punched Galvan in the face with a closed fist," then "slammed Galvan's face into the concrete." *Id.*

Galvan lost consciousness, and Raymond, Potter, Hill and Halley "then placed Galvan in handcuffs and picked him up off the ground." *Id.* After Galvan was handcuffed, Potter, Halley and Hill "and/or Does 1-26[]"[1] purposefully slammed Galvan's body into the side" of a

---

[1] If a defendant's identity is unknown when the complaint is filed, plaintiffs have an opportunity through discovery to identify them. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). But the court will dismiss unnamed defendants if discovery clearly would not uncover their identities or if the complaint would clearly be dismissed on other grounds. *Id.* at 642. The

2

police patrol vehicle before placing Galvan inside. *Id.* ¶ 31. After Galvan was in the patrol vehicle, Potter bragged to Doe 1: "Fucking socked him in the face like four times." *Id.* ¶ 32. Potter then turned off his body camera while bragging to Doe 1. *Id.* No officer told Galvan he was detained or under arrest. *Id.* ¶ 34. The Vacaville police department did not discipline or retrain Potter after this beating. Potter had been named the department's Officer of the Year for 2014. *Id.* ¶ 35.

Galvan has sued Raymond, Potter, Hill and Halley for excessive force under 42 U.S.C. § 1983, including for a failure to intercede. *Id.* ¶¶ 43-47, 71-74. Potter also has sued the City of Vacaville (City) and John Carli, the Chief of Police for Vacaville Police Department at all relevant times, on various theories of municipal and supervisory liability under 42 U.S.C. § 1983 in relation to the use of excessive force by Raymond, Potter, Hill and Halley. *Id.* ¶¶ 48-70.

As noted, defendants move to dismiss Galvan's complaint in its entirety. Mot., ECF No. 13. Galvan opposes, Opp'n, ECF No. 15, and defendants have replied. Reply, ECF No. 18. The court resolves this motion as explained below.

II. LEGAL STANDARD

A party may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The court may grant the motion only if the complaint lacks a "cognizable legal theory" or if its factual allegations do not support a cognizable legal theory. *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), though it need not include "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This "sufficient factual matter" must make the claim at least plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Conclusory or formulaic recitations of elements do not alone suffice. *Id.* (citing *Twombly*, 550 U.S. at 555). In a Rule 12(b)(6) analysis, the court must accept well-pleaded factual allegations

---

federal rules also provide for dismissing unnamed defendants that, absent good cause, are not served within 90 days of the complaint. Fed. R. Civ. P. 4(m).

3

as true and construe the complaint in a light most favorable to the plaintiff. *Id.*; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).

III. DISCUSSION

    A. Fourth Amendment Claims

Defendants assert Galvan fails to state a claim under the Fourteenth Amendment in his first claim. Mot. at 5-6. Additionally, defendants contend Galvan fails to state a claim against Raymond in his first claim because "[n]o facts are alleged showing Raymond engaged in any excessive force or unlawful search and seizure against" Galvan, and Galvan fails to allege sufficient facts to state Raymond "was an integral participant in the alleged excessive force by the other officers." *Id.* at 6.

Galvan clarifies that he asserts a claim under the Fourth Amendment as applicable to the states through the due process clause of the Fourteenth Amendment; he does not advance "a standalone substantive due process claim under the Fourteenth Amendment." Opp'n at 4. Additionally, Galvan asserts he has alleged Raymond "was present at the scene of the incident" and "assisted in handcuffing" without "interceding to stop the violation of [Galvan's] rights in [Raymond's] immediate vicinity." *Id.* (citing Compl. ¶¶ 28-30, 72-74). At hearing, Galvan clarified his Fourth Amendment claim against Raymond is based on his failure to intercede.

        1. Excessive Force: Fourth and Fourteenth Amendments

Excessive force claims against law enforcement officers "in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham v. Connor*, 490 U.S. 386, 395 (1989). Galvan's complaint alleges no conduct unrelated to excessive force used by Potter, Hill, Halley or Raymond. The court GRANTS in part as unopposed defendants' request to dismiss Galvan's first claim to the extent it can be construed to state Fourteenth Amendment claims against Potter, Hill, Halley or Raymond.

        2. Failure to Intercede: Raymond

Defendants contend Galvan's third cause of action, a failure to intercede, is redundant of Galvan's first claim. Mot. at 12-13. Galvan asserts "[t]he only question before the

4

court is whether a cognizable claim has been plead, and motion to dismiss should not be granted because of style or formatting." Opp'n at 6. Defendants also contend the third claim "fails for the same reason the first cause of action [excessive force] fails." Reply at 8. The court disagrees with defendants, but finds Galvan has not sufficiently pleaded a failure to intercede against Raymond.

When a defendant does not inflict a constitutional injury himself, he may be liable if he failed to intervene to prevent others' actions: "'police officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen.'" *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000) (quoting *Koon v. United States,* 34 F.3d 1416, 1447 n.25 (9th Cir.1994), *rev'd on other grounds,* 518 U.S. 81 (1996). However, officers may be liable under a failure-to-intercede theory only if they had the opportunity to intercede. *Id.* at 1289-90. "[I]f a violation happens so quickly that an officer had no 'realistic opportunity' to intercede, then the officer is not liable for failing to intercede." *Knapps v. City of Oakland,* 647 F.Supp.2d 1129, 1159 (N.D. Cal. 2009) (quoting *Cunningham*, 229 F.3d at 1289-90)). As one district court has put it, to proceed on a failure to intervene claim, "plaintiff must show that the defendant-bystanders had enough time to observe what was happening and to intervene to stop it." *Harrison v. Hedgpeth,* No. 12-0963, 2014 WL 46701, at *8 (N.D. Cal. Jan. 6, 2014).

Galvan has pleaded a portion of a failure to intercede theory against Potter, Hill and Halley. Specifically, he sufficiently pleads facts showing a reasonable opportunity for Potter, Hill, or Halley to have interceded to temper their fellow officers' alleged excessive force based on their participation in Galvan's detention. *See* Compl. ¶¶ 29-30. In the same vein, Galvan also alleges Potter, Halley and Hill were present when Galvan's body was "purposefully slammed" into a patrol vehicle before officers placed him inside. *Id.* ¶ 31.

Galvan has not sufficiently pleaded the additional facts necessary to fully state a failure to intercede theory against Raymond. Raymond located Galvan and Ashley at the scene where excessive force was allegedly used, and Raymond, Potter, Hill and Haley later placed Galvan in handcuffs. *Id.* ¶¶ 28, 30. But Galvan has not pleaded any facts to permit an inference that Raymond was close enough to have had a reasonable opportunity to intercede. Galvan does

5

not allege that Raymond remained in the area or close to Galvan in between Raymond's locating Galvan and his participating in handcuffing Galvan, or after the handcuffing. *Compare id.* ¶¶ 28-31, *and Willis v. Cty. of Sacramento*, No. 13- 01671, 2014 WL 4385642, at *4 (E.D. Cal. Sept. 4, 2014) ("That [Officer] knew Plaintiff was injured does not mean that he had an opportunity to intercede." (internal citations omitted)), *with Malott v. Placer Cty.*, No. 2:14-CV-01040-KJM, 2015 WL 3828251, at *4 (E.D. Cal. June 18, 2015) (denying motion to dismiss claim for failure to intercede where plaintiff alleged defendant officer "was not only in the vehicle at the time, but could see plaintiff and [other defendant officer], and could have intervened but did not").

The court GRANTS in part defendants' motion to dismiss the third claim as to Raymond only, but with leave to amend.

B. <u>Municipal Liability</u>

Defendants contend Galvan has not pleaded facts sufficient to state a claim for municipal liability, also known as a *Monell* claim, against the City or Carli under any available theory. Mot. at 7-11. Galvan asserts he has sufficiently pleaded a *Monell* claim, having "identified customs and policies underlying his § 1983 municipal and supervisory liability claims," including "several unconstitutional customs and policies . . . based on the City's and [Carli's] omissions, including failures to train and supervise." Opp'n at 5-6 (citing Compl. ¶¶ 49-69).

Section 1983 imposes liability on "persons" who, under color of law, deprive others of a constitutional right. 42 U.S.C. § 1983. Municipalities may be held liable as "persons" under § 1983, but not for the unconstitutional acts of their employees based solely on a respondeat superior theory. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-95 (1978). Rather, a plaintiff seeking to impose liability on a municipality under § 1983 is required "to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997). To sufficiently plead a *Monell* claim and withstand a Rule 12(b)(6) motion to dismiss, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *AE ex rel.*

*Hernandez v. Cty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)).

A *Monell* claim may be stated under three theories of municipal liability: (1) when official policies or established customs inflict a constitutional injury; (2) when omissions or failures to act amount to a local government policy of deliberate indifference to constitutional rights; or (3) when a local government official with final policy-making authority ratifies a subordinate's unconstitutional conduct. *Clouthier v. Cty. of Contra Costa*, 591 F.3d 1232, 1249-50 (9th Cir. 2010), *overruled on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016).

To state a claim under *Monell*, a party must identify the challenged policy or custom, explain how it was deficient, explain how it caused the plaintiff harm, and reflect how it "amounted to deliberate indifference, i.e.[,] explain[ ] how the deficiency involved was obvious and the constitutional injury was likely to occur." *Young v. City of Visalia*, 687 F. Supp. 2d 1141, 1149 (E.D. Cal. 2009) (examining *Lee v. City of Los Angeles*, 250 F.3d 668, 682 (9th Cir. 2001)); *see Dougherty v. City of Covina*, 654 F.3d 892, 900-01 (9th Cir. 2011) (affirming dismissal where plaintiff failed to allege "any facts demonstrating that his constitutional depravation was the result of a custom or practice of the [defendant city] or that the custom or practice was the 'moving force' behind his constitutional deprivation").

1. Policy or Custom

Defendants assert Galvan's complaint alleges "numerous vague, general policies," including: "tolerating the use of excessive force; covering up violations by failing to investigate properly, failing to discipline and encouraging false reports; tolerating and encouraging a code of silence; tolerating improper investigative procedures for handling complaints of officer misconduct; and failing to enforce appropriate policies, procedures and training." Mot. at 8. Defendants argue these "unsupported conclusions and recitation of the elements of § 1983 municipal liability are insufficient to meet [Galvan's] pleading burden." *Id.* at 9. In opposition, Galvan contends he has pleaded "factually identified customs and policies" consistent with courts denying motions to dismiss. Opp'n at 5.

7

"To survive a motion to dismiss, 'a bare allegation that government officials' conduct conformed to some unidentified government policy or custom' is insufficient; instead, plaintiffs' complaint must include 'factual allegations that . . . plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.'" *Shelley v. Cty. of San Joaquin,* 954 F.Supp.2d 999, 1009 (E.D. Cal. 2013) (quoting *AE ex rel. Hernandez v. Cty. of Tulare,* 666 F.3d at 637; c*f. Thomas v. City of Galveston, Texas,* 800 F.Supp.2d 826, 842-43 (S.D. Tex. 2011) ("In the context of municipal liability, as opposed to individual officer liability, it is exceedingly rare that a plaintiff will have access to (or personal knowledge of) specific details regarding the existence or absence of internal policies or training procedures prior to discovery. Accordingly, only minimal factual allegations should be required at the motion to dismiss stage. Moreover, those allegations need not specifically state what the policy is, as the plaintiff will generally not have access to it, but may be more general.").

Despite defendants' assertion that Galvan's alleged policies are "vague" and "general," Galvan has identified customs or policies sufficient "to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Galvan has identified tolerating excessive force, failures to properly investigate or evaluate complaints of excessive force, failures to discipline unconstitutional police activity, allowing or encouraging incomplete or false reports and statements and allowing or encouraging a code of silence among officers as customs or policies of Vacaville Police Department. Compl. ¶ 49. Galvan's identifying these customs or policies ameliorate concerns about the "expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216.

Galvan's alleged policies are similar to those alleged in other cases where courts have denied a motion to dismiss. *See, e.g.*, *Bass v. City of Fremont*, No. C12-4943 TEH, 2013 WL 891090, at *4 (N.D. Cal. Mar. 8, 2013) (denying motion to dismiss § 1983 claims against municipal entities where plaintiff alleged the city had been given notice of defendant officers' pattern of excessive force, municipal entities had demonstrated deliberate indifference to this pattern by failing to take necessary measures to prevent the pattern continuing and municipal

8

entities "failed to adequately train the officers 'in the necessity of having probable cause to detain, arrest or charge a citizen (such as [p]laintiff) with a crime or infraction, and to further refrain from discriminating against African American citizens simply by virtue of their ethnicity and/or by virtue of a citizen's right to verbally confront and/or question the performance of a public official'"); *Solis v. City of Vallejo*, No. 2:14-CV-00483-KJM-KJN, 2014 WL 2768847, at *6-7 (E.D. Cal. June 18, 2014) (denying motion to dismiss where asserted violations of the policy "included, but were not limited to, entering private residences without a warrant and without exigent circumstances; pointing firearms at residents, in their own home, and who were cooperating with officer commands; detaining residents without the requisite cause; and using unreasonable, unjustified, and/or excessive force").

Galvan's alleged policies differ from other complaints that "fail[ed] to state what the policies or practices actually [were]." *Garcia ex rel. Garcia v. Cty. of Sacramento*, No. CIV S-11-3317 KJM, 2012 WL 1605056, at *3 (E.D. Cal. May 7, 2012); *see Shelley v. Cty. of San Joaquin*, 954 F. Supp. 2d 999, 1009 (E.D. Cal. 2013) ("Here, Plaintiffs' complaint is devoid of any allegation that their injuries were the result of a county policy, custom, or practice of mishandling human remains.").

Thus, the court DENIES defendants' motion to dismiss as to Galvan's municipal liability claim for an unconstitutional policy or custom.

### 2. Ratification by a Final Policymaker

Defendants contend Galvan has failed to allege a ratification theory of liability. Mot. at 9-10. Specifically, defendants contend Galvan's complaint "states no facts showing the City's authorized policymakers knew of unconstitutional conduct by any City employee . . . and approved it." *Id.* at 10. Galvan does not specifically address ratification in his opposition, as defendants observe in their reply. Reply at 6.

A plaintiff may claim *Monell* liability where an "official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992). "A policymaker's knowledge of an unconstitutional act does not, by itself, constitute ratification." *Christie v. Iopa*, 176 F.3d 1231,

9

1239 (9th Cir. 1999). Furthermore, "a policymaker's mere refusal to overrule a subordinate's completed act does not constitute approval." *Id.* Rather, ratification requires the authorized policymaker to make a "conscious, affirmative choice." *Gillette*, 979 F.2d at 1347. Ratification "and thus the existence of a *de facto* policy or custom, can be shown by a municipality's post-event conduct, including its conduct in an investigation of the incident." *Dorger v. City of Napa*, No. 12-cv-440 YGR, 2012 WL 3791447, at *5 (N.D. Cal. Aug. 31, 2012) (emphasis in original) (citing Henry v. Cty. of Shasta, 132 F.3d 512, 518 (9th Cir. 1997)). After proving ratification occurred, a plaintiff must also show that the ratification was (1) the cause in fact, and (2) the proximate cause of the constitutional deprivation. *Arnold v. Int'l Bus. Machines Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981). As explained below, Galvan fails to allege a final policymaker, a conscious choice by that final policymaker and knowledge of the unconstitutional conduct by the final policymaker.

a) <u>Final Policymaker</u>

Whether an official is a policymaker for *Monell* purposes is a question governed by state law. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988). "'Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority, and of course, whether an official had final policymaking authority is a question of state law.'" *Id.* (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 483 (1986) (plurality opinion)).

Here, Galvan has not identified a final policymaker. Instead, Galvan pleads unconstitutional actions or omissions were "ratified by policy making officers for City and [Vacaville Police Department]." Compl. ¶ 49. Although Galvan later pleads the unconstitutional actions or omissions were "ratified by final policymakers for [Vacaville Police Department] and/or City," *id.* ¶ 50, and Carli was at least one "authorized policy maker[]," *id.* ¶ 51, Galvan has not pleaded who was the final policymaker under state law. *Compare* Compl. ¶¶ 36, 49-51, 62, *with Larez v. City of Los Angeles*, 946 F.2d 630, 633, 646 (9th Cir. 1991) (observing from the record that the chief of police was "an official policymaker for the City on police matters"). The court therefore finds Galvan has not sufficiently pleaded a ratification theory.

### b) Ratification of the Basis for the Actions

A plaintiff must plead that a final policymaker both "ratified a subordinate's unconstitutional decision or action and the basis for it." *Gillette*, 979 F.2d at 1346-47. Ratification requires the authorized policymaker to make a "conscious, affirmative choice." *Id.* at 1347. For example, in *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1053 (9th Cir. 2013), the plaintiff alleged that the chief of police delayed a salary increase for plaintiff in retaliation for plaintiff's exercising his First Amendment rights. The Ninth Circuit concluded that the city manager, not the chief of police, "was the city's final policymaker," where the manager approved the chief of police's decision to delay. *Id.* at 1066. Although it was undisputed that the city manager approved the delay, the plaintiff failed to allege that the city manager "knew that the decision was in retaliation for protected speech" or that the city manager "ratified the decision despite such knowledge." *Id*.

Here, Galvan's allegations are legal conclusions. *See* Compl. ¶¶ 36, 49-50, 52-53, 56-57, 60. Galvan must plead facts showing a final policymaker approved of the alleged excessive force by Potter, Hill, Halley and Raymond, and that final policymaker knew the conduct was excessive force. Although Galvan has pleaded that someone, including possible doe defendants, engaged in conduct showing a policy or practice of "ratifying with deliberate indifference the making of improper detentions and arrests, the use of excessive force, and the fabrication of official reports to cover up the misconduct of defendants," *id.* ¶ 36, Galvan has not sufficiently pleaded facts showing a final policymaker's approval or ratification involving a "conscious, affirmative choice" and knowledge of the excessive force used by Potter, Hill, Halley and Raymond. *See Gillette*, 979 F.2d at 1347.

The court therefore GRANTS in part defendants' motion to dismiss Galvan's second cause of action based on a ratification theory of liability.

### 3. Failure to Train or Supervise

Defendants allege Galvan fails to state a municipal liability claim based on inadequate training. Mot. at 10-11. Defendants contend Galvan "states no facts showing what the City's training was, no prior similar acts nor any basis to show the need for more or different

training was so obvious, nor the alleged inadequacy so likely to result in constitutional violations, which are necessary to meet the high deliberate indifference standard." Mot. at 11; *see also* Reply at 7. Although Galvan asserts his claims for municipal liability are properly pleaded, Opp'n at 5-6, he does not address his allegations of failure to train and supervise, merely stating "several unconstitutional customs and policies alleged are based on [City and Carli's] omissions, including failures to train and supervise." *Id.* at 5-6 (citing Compl. ¶¶ 50-69).

To impose liability on a local government for failure to adequately train its employees, the government's omission must amount to "deliberate indifference" to a constitutional right. This standard is met when "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris,* 489 U.S. 378, 390 (1989). For example, if police activities in arresting fleeing felons "so often violate constitutional rights that the need for further training must have been plainly obvious to the city policymakers," then the city's failure to train may constitute "deliberate indifference." *Id.* at 390 n. 10. "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality—a 'policy' as defined by our prior cases—can a city be liable for such a failure under § 1983." *Id.* at 389. And only under such circumstances does the failure to train constitute "a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury." *Id.* at 390.

The Ninth Circuit's opinion in *Starr*, 652 F.2d at 1216, provides an example of a complaint sufficiently alleging deliberate indifference. There, the plaintiff "specifically allege[d] numerous incidents in which inmates in Los Angeles County jails [had] been killed or injured because of the culpable actions of the subordinates of Sheriff Baca." *Id.* The complaint also alleged the sheriff there "was given notice of all of these incidents," including "in several reports, of systematic problems in the county jails under his supervision that [had] resulted in these deaths and injuries." *Id.* Additionally, the complaint alleged "that Sheriff Baca did not take action to protect inmates under his care despite the dangers, created by the actions of his subordinates, of which he had been made aware." *Id.*

Here, Galvan has similarly alleged a pattern of defendants having "ignored complaints of malfeasance and actively covered up for officers," that the City "has in the past and continues to knowingly ratify the unconstitutional actions of employed law enforcement officers by shifting the blame to the victims of excessive force, misusing the criminal justice system to obtain privileged and private information to discredit said victims or circumvent the discovery rules in civil rights violation matters." Compl. ¶¶ 56-57; *see Coe v. Schaeffer*, No. 2:13-CV-00432-KJM-CK, 2014 WL 1513305, at *4 (E.D. Cal. Apr. 11, 2014) (denying motion to dismiss second amended complaint where plaintiffs alleged in part "defendants knew or should have known of complaints against [defendant officer] for similar conduct as in this case 'because other citizens had made verbal and written complaints against [defendant officer]' . . . and defendants told [defendant officer] Schaeffer that despite the complaints, only 'a perfunctory investigation would be performed,' Schaeffer 'would be exonerated,' and she would not be punished" in contrast to the previously dismissed complaint's "single allegation of a 'history of misconduct'"); *Malott v. Placer Cty.*, No. 2:14-CV-1040 KJM EFB, 2014 WL 6469125, at *7 (E.D. Cal. Nov. 17, 2014) ("[P]laintiff has not identified any policies regarding supervision and training, explained how they are deficient, or suggested how they led to his injuries.").

Accordingly, the court DENIES defendants' motion to dismiss as to Galvan's municipal liability claim for failure to train or supervise.

C. Supevisory Liability: Chief Carli

Defendants contend Galvan has not sufficiently pleaded supervisory liability for Carli, stating Galvan's claims here "are based on the same inadequate, conclusory allegations as his *Monell* claims against the City." Mot. a 12. Galvan does not address supervisory liability in detail in his opposition. *See* Opp'n at 5-6.

At hearing, Galvan confirmed he asserts only municipal liability against Carli. Galvan disclaimed pursuing supervisory liability against Carli. The court therefore GRANTS defendants' motion to dismiss any supervisory liability claim against Carli.

D. <u>Leave to Amend</u>

Galvan has requested leave to amend for his claims against Raymond, stating he "believes that the pleading can be supplemented to provide more specific factual allegations." Opp'n at 4. Although defendants cite case law indicating a court should not grant leave to amend if amendment would be futile, defendants do not oppose Galvan's request. *See* Mot. at 4; Reply at 1.

The court should only deny a request for leave to amend if allowing amendment would unduly prejudice the opposing party, cause undue delay, be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008); *see also Sharkey v. O'Neal*, 778 F.3d 767, 774 (9th Cir. 2015) (the court should grant leave to amend where additional factual allegations could cure a complaint's defects). Galvan has not yet amended his complaint. Defendants do not allege any prejudice, undue delay, or bad faith, and the court finds none present. Because Federal Rule of Civil Procedure 15(a)(2) states that courts "should freely give leave [to amend] when justice so requires" and Galvan conceivably could amend the complaint to cure any deficiencies the court has found, the court GRANTS Galvan leave to amend.

Galvan may amend his complaint, including to clarify his allegations as to Raymond and Carli and alleging facts sufficient to plead any dismissed claims, to the extent he can amend while complying with Federal Rule of Civil Procedure 11.

IV. <u>CONCLUSION</u>

Based on the reasons stated above, the court GRANTS in part defendants' motion to dismiss as to:

- Any Fourteenth Amendment claims against Potter, Hill, Halley and Raymond;
- Galvan's failure to intercede claim against Raymond;
- Galvan's ratification theory of municipal liability; and
- Any supervisory liability claim against Carli.

/////

/////

The court otherwise DENIES the remainder of defendants' motion. The court GRANTS Galvan leave to amend. Any amended complaint shall be filed within twenty-one (21) days.

IT IS SO ORDERED.

DATED: September 5, 2018.

_____
UNITED STATES DISTRICT JUDGE